FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ OCT 1 0 2007 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------X

ELOY A. ROLE,

                Plaintiff,

-against-

JOHNS HOPKINS BAYVIEW MEDICAL
CENTER; and LOCAL 485 HEALTH &
WELFARE FUND,

                Defendants.

-------------------------------------------------X

**REPORT AND RECOMMENDATION
06 CV 2475 (DLI)(LB)**

**BLOOM, United States Magistrate Judge:**

    Plaintiff, Eloy Role, brings this *pro se* action alleging that the defendants unlawfully denied him medical coverage and medical treatment under the Employee Retirement Income Security Act, 29 U.S.C. § 1132 ("ERISA"), and the Emergency Medical Treatment and Labor Act, 42 U.S.C. § 1395dd ("EMTALA"), respectively. Defendant Johns Hopkins Bayview Medical Center, Inc. ("Johns Hopkins") opposes plaintiff's motion to amend his original complaint and moves to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), 12(b)(3), and 12(b)(6). Defendant Local 485 Health & Welfare Fund ("Fund") moves for summary judgment pursuant to Fed. R. Civ. P. 56[1] and requests that the Court dismiss this action for failure to comply with Court Orders pursuant to Fed. R. Civ. P. 37(b)(2). The Honorable Dora L. Irizarry referred these motions to me for a Report and Recommendation ("R&R") in accordance with 28 U.S.C. § 636(b). For the reasons that follow, I respectfully recommend that Johns Hopkins's motion to dismiss and the Fund's motion for summary judgment should be granted and plaintiff's complaint should be dismissed.

---

[1] The Fund gave plaintiff the requisite notice under Local Civil Rule 56.2.

## BACKGROUND

Plaintiff is an employee of Slantfin Corporation, which has a collective bargaining agreement with the Fund, an employee benefit program overseen by International Union of Electrical Workers ("IUE") Local 485 Union trustees. See Defendant Local 485 Health and Welfare Fund's Statement of Uncontested Facts Pursuant to Rule 56.1 in Support of Its Motion for Summary Judgment ("Fund's 56.1 Statement") ¶¶ 1-2. Plaintiff is entitled to certain medical benefits as outlined in the Fund's Summary Plan Description (the "Plan"). See Fund's 56.1 Statement ¶ 3.

Johns Hopkins is a not-for-profit corporation and a hospital with various in- and out-patient departments, located in and operating under the laws of Maryland. See Affidavit of M. Lauree Barreca, attached as Ex. A to Affidavit in Opposition to Plaintiff's Motion for Leave to Amend the Complaint and in Support of Johns Hopkins Bayview Medical Center, Inc.'s Motion to Dismiss the Complaint ("Barreca Aff.") ¶¶ 3-4. Johns Hopkins is not registered or licensed to do business in New York, nor does it solicit or directly transact business here. Johns Hopkins does not see patients, own property, maintain an office, a telephone listing, or a bank account in New York. See Barreca Aff. ¶¶ 5-11.

On April 12, 2006, plaintiff needed immediate medical treatment when he presented himself with rectal bleeding at Essex Endoscopy Center in New York. See Compl. ¶¶ 1-2;[2] Fund's 56.1 Statement ¶ 4. When plaintiff returned to the facility on April 18, 2006 for a colonoscopy as recommended by a treating physician, he had to wait two hours due to out-of-service equipment. See Compl. ¶ 5; Fund's 56.1 Statement ¶ 5. Plaintiff left Essex and contacted Johns Hopkins the

---

[2] "Compl." refers to plaintiff's original complaint, which, with the exceptions of the Nature of the Action, and Jurisdiction and Venue sections, is identical to plaintiff's proposed amended complaint.

same day, "seeking a more responsible medical attention on the field of gastroenterology." See Compl. ¶ 6; Fund's 56.1 Statement ¶ 6. Plaintiff sent his insurance information and medical records to Johns Hopkins; a medical center employee emailed plaintiff that he should come for an appointment on April 26, 2006 and "confirmed acceptance of the [Fund's] health plan." See Compl. ¶¶ 7-8. On April 26, 2006, Johns Hopkins doctors examined plaintiff and directed him to schedule an appointment to have a colonoscopy. See Compl. ¶ 9. On May 1, 2006, plaintiff made the colonoscopy appointment for May 15, 2006. See Compl. ¶ 10; Fund's 56.1 Statement ¶ 7.

On May 11, 2006, the Fund informed plaintiff that it would not cover the procedure at Johns Hopkins on May 15, 2006. See Compl. ¶ 12; Fund's 56.1 Statement ¶ 8. The Fund denied plaintiff's claim because it has contracts allowing full coverage of medical services with two New York providers, but not with Johns Hopkins. See Fund's 56.1 Statement ¶¶ 9-10. Plan beneficiaries can use providers that are not under contract for full coverage with the Fund, but full payment is not guaranteed. See Fund's 56.1 Statement ¶ 9. While the Plan advises beneficiaries of the procedure for appealing claim denials, plaintiff never appealed the Fund's denial of full coverage for the procedure he sought at Johns Hopkins. See Fund's 56.1 Statement ¶¶ 11, 13.

Despite the Fund's advising plaintiff on May 11, 2006 that it would not cover his procedure, he went to Johns Hopkins on May 15, 2006 to have the colonoscopy. See Compl. ¶ 14; Fund's 56.1 Statement ¶ 12. When he arrived, plaintiff was told by a Johns Hopkins employee that he would have to pay for the colonoscopy first, then seek reimbursement from his insurer, the Fund. See Compl. ¶ 14; Fund's 56.1 Statement ¶ 12. Plaintiff alleges that he:

> met somebody who introduced herself as a supervisor for the gastroenterology clinic. She told the plaintiff that unless he paid for the service he would not be attended—the [Fund] stated it will not

3

> accept the service charges. Plaintiff told this official to bill the [Fund] and if it failed to honor the bill(s), he would be responsible for them. Summarizing, [Johns Hopkins] denied plaintiff attention and abandoned him.

See Compl. ¶ 18; Fund's 56.1 Statement ¶ 12. As plaintiff refused to pay for the procedure first and seek reimbursement from the Fund, Johns Hopkins refused to perform plaintiff's colonoscopy. See Compl. ¶ 18; Fund's 56.1 Statement ¶ 12.

## PROCEDURAL HISTORY

Plaintiff filed his original complaint on May 22, 2006, one week after Johns Hopkins refused to perform his colonoscopy. The Fund answered on June 13, 2006, after which plaintiff filed an amended complaint on August 9, 2006. Plaintiff's complaint and amended complaint are identical with the exception of the Nature of the Action and Jurisdiction and Venue sections on the first pages. "The proposed amended complaint leaves intact all plaintiff's original allegations against [Johns Hopkins] and seeks to enhance the meaning of termination or abandonment of treatment to suffice the requirements of jurisdiction and venue as well as the nature of the action." Plaintiff's Memoranda [sic] of Law in Support of His Motion to Amend at ii.

Plaintiff alleges that Johns Hopkins "refused to attend plaintiff even after he was admitted" and that it "had plenty of time to inform plaintiff to look for another medical facility," but "failed to do so . . . from April 26, 2006 to May 15, 2006," exposing plaintiff to "unknown consequences in connection with his health when he was in need of the procedure." See Compl. ¶¶ 19-21. Plaintiff alleges that the Fund "had a clear obligation to afford plaintiff's medical expenses," but failed to do so, and that as a result "[p]laintiff has sustained damages including but not limited to, injuries, [t]he disruption of his normal life, medical procedure preparation for no reasons, expenses due to days out

of work, travel and accommodations all product of the breach." See Compl. ¶¶ 32-34. Plaintiff seeks eight million dollars, including punitive damages.

Johns Hopkins opposed plaintiff's motion to amend and moved to dismiss in lieu of an answer on September 8, 2006. Johns Hopkins argues that plaintiff's proposed amendment would be futile, and that its motion to dismiss should be granted because: (1) this Court lacks personal jurisdiction over it; (2) this Court lacks subject matter jurisdiction, based either on a federal question or diversity of the parties; (3) venue is improper; and (4) plaintiff fails to state a claim under the EMTALA. See Memorandum of Law in Opposition to Plaintiff's Motion for Leave to Amend His Complaint and in Support of Cross-Motion to Dismiss ("Johns Hopkins's Memo"). Plaintiff opposes Johns Hopkins's motion and Johns Hopkins has filed a reply.

The Fund answered plaintiff's amended complaint on September 8, 2006 and the parties conducted discovery. After discovery concluded on February 5, 2007, the Fund requested and was granted permission to file the instant summary judgment motion. The Fund argues that plaintiff's amended complaint should be dismissed based on plaintiff's failure to comply with three Court Orders during discovery. It also argues that summary judgment should be granted because plaintiff failed to exhaust his administrative remedies before filing suit, as required by ERISA, and because the Fund's decision not to cover plaintiff's colonoscopy with Johns Hopkins was not arbitrary and capricious. See Memorandum of Law in Support of Defendant Local 485 Health and Welfare Fund's Motion for Summary Judgment and for an Order Imposing the Sanction of Dismissal With Prejudice ("Fund's Memo"). The Fund filed a letter dated May 4, 2007 along with its summary judgment motion stating that it had "received numerous documents from the plaintiff Eloy Role, however, it is unclear which documents, if any, Mr. Role submits in opposition to the Fund's

5

motion," and that it had left messages for Mr. Role seeking clarification but had received no response. See docket entry 63. After the Fund's motion was filed electronically along with its letter regarding plaintiff's opposition on May 4, 2007, plaintiff filed an opposition to the motion on May 21, 2007. The Fund has not filed a reply to plaintiff's late opposition to its motion, however, in the interest of justice, the Court considers plaintiff's opposition, albeit late.

## DISCUSSION

### I. Standards of Review

In a motion to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2), "the plaintiff bears the burden of showing that the court has jurisdiction over the defendant." Kernan v. Kurz-Hastings, Inc., 175 F.3d 236, 240 (2d Cir. 1999). In deciding whether jurisdiction over the defendant exists, "the Court may consider matters outside the pleadings without converting the motion to dismiss into a motion for summary judgment." Hollins v. U.S. Tennis Ass'n, 469 F.Supp.2d 67, 70 (E.D.N.Y. 2006) (citing In re Magnetic Audiotape Antitrust Litig., 334 F.3d 204, 208 (2d Cir. 2003)).

When a district court considers a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), it "must limit itself to the facts stated in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." Hayden v. County of Nassau, 180 F.3d 42, 54 (2d Cir. 1999). The Court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in the plaintiff's favor. See Bell Atlantic Corp. v. Twombly, 550 U.S. ----, ----, 127 S.Ct. 1955, 1965 (2007); (citing Swierkiewicz v. Sorema N. A., 534 U.S. 506, 508, n. 1 (2002)); Koppel v. 4987 Corp., 167 F.3d 125, 130 (2d Cir. 1999). To

survive a motion to dismiss, however, a plaintiff's complaint must allege sufficient facts "to state a claim to relief that is plausible on its face." Twombly, 127 S. Ct. at 1974. If a plaintiff does not "nudge [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." Id. Nonetheless, "[a] document filed *pro se* is 'to be liberally construed,' and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" Erickson v. Pardus, 127 S.Ct. 2197, 2200 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)). See also Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994) (holding that where a party is proceeding *pro se*, the Court is obliged to "read his supporting papers liberally, and will interpret them to raise the strongest arguments that they suggest").

Summary judgment should be granted if the pleadings, depositions, answers, interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if it is one that "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "An issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 202 (2d Cir. 2007) (quoting Anderson, 477 U.S. at 248 ); see also Celotex Corp. v. Cadrett, 477 U.S. 317, 322 (1986); Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). "The trial court's function in deciding such a motion is not to weigh the evidence or resolve issues of fact, but to decide instead whether, after resolving all ambiguities and drawing all inferences in favor of the non-moving party, a rational juror could find in favor of that party." Pinto v. Allstate Ins. Co., 221 F.3d 394, 398 (2d Cir. 2000). See also Baker v. The Home Depot, 445 F.3d 541, 543 (2d Cir. 2006) (resolving all ambiguities and

drawing all inferences in favor of the nonmoving party on summary judgment). For the purposes of summary judgment, the facts here are viewed in the light most favorable to plaintiff.

"An adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); see Matsushita, 475 U.S. at 586-87 (1986). In other words, the non-moving party must provide "affirmative evidence" from which a jury could return a verdict in its favor. Anderson, 477 U.S. at 257. "Conclusory allegations, conjecture, and speculation ... are insufficient to create a genuine issue of fact." Niagra Mohawk Power Corp. v. Jones Chemical, Inc., 315 F.3d 171, 175 (2d Cir. 2003) (quoting Kerzer v. Kingly Mfg., 156 F.3d 396, 400 (2d Cir. 1998)). See also Western World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d Cir. 1990) (non-movant cannot defeat summary judgment through "mere speculation or conjecture") (internal quotations omitted). Moreover, "[t]he 'mere existence of a scintilla of evidence' supporting the non-movant's case is also insufficient to defeat summary judgment." Id. (quoting Anderson, 477 U.S. at 252). "It is well established that the submissions of a *pro se* litigant must be construed liberally and interpreted 'to raise the strongest arguments that they suggest.'" Triestman v. Federal Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (quoting Burgos, 14 F.3d at 790).

## II. Personal Jurisdiction Over Johns Hopkins

Personal jurisdiction over an out-of-state defendant like Johns Hopkins is based on New York's long-arm statute, N.Y. C.P.L.R. § 302. See 42 U.S.C. § 1395dd. See also Omni Capital Intern., Ltd. v. Rudolf Wolff & Co., Ltd., 484 U.S. 97, 105, (1987) ("[U]nder Rule 4(e), a federal court normally looks either to a federal statute or to the long-arm statute of the State in which it sits to determine whether a defendant is amenable to service, a prerequisite to its exercise of personal

8

jurisdiction."); Anonymous v. Kaye, 104 F.3d 355, No. 95-9295, 1996 WL 734074, at *2 (2d Cir. Dec. 23, 1996) (where the federal statute "does not provide for service of process beyond state borders, the district court requires authorization from the state long-arm statute, N.Y. C.P.L.R. § 302, before it may exercise personal jurisdiction over the out-of-state defendants-appellees"). When considering a motion to dismiss for lack of personal jurisdiction, "a district court must conduct a two-part inquiry. First, it must determine whether the plaintiff has shown that the defendant is amenable to service of process under the forum state's laws; and second, it must assess whether the court's assertion of jurisdiction under these laws comports with the requirements of due process." Metropolitan Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 567 (2d Cir. 1996).

### A. Long-Arm Jurisdiction Under N.Y. C.P.L.R. § 302

The Court does not have personal jurisdiction over Johns Hopkins under New York's long-arm statute, N.Y. C.P.L.R. § 302. Under New York state law, a court may exercise personal jurisdiction over any party who:

> 1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or
>
> 2. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or
>
> 3. commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he
>
>> (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or
>>
>> (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or
>
> 4. owns, uses or possesses any real property situated within the state.

9

N.Y. C.P.L.R. § 302 (McKinney's). Johns Hopkins is not registered or licensed to do business in New York, nor does it solicit or directly transact business here. Johns Hopkins does not see patients, does not own property, and does not maintain an office, a telephone listing, or a bank account in New York. See Barreca Aff. ¶¶ 5-11. Plaintiff visited Johns Hopkins in Maryland on April 28 and May 15, 2006, and the communications plaintiff had with Johns Hopkins's employees occurred while those employees were in Maryland. See Barreca Aff. ¶¶ 12-13. See also Compl. at Jurisdiction and Venue ("The allegations against [Johns Hopkins] took place in Baltimore in the State of Maryland."). There is no basis for the exercise of personal jurisdiction over Johns Hopkins under N.Y. C.P.L.R §§ 302(1), (2), (3), or (4).

### B. The Requirements of Due Process

Moreover, exercising personal jurisdiction over Johns Hopkins would not comport with the requirements of the due process clause of the Fourteenth Amendment to the United States Constitution. Under that clause, a state may only exercise personal jurisdiction over an out-of-state defendant if it has "certain minimum contacts . . . such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Kernan, 175 F.3d at 242 (quoting Calder v. Jones, 465 U.S. 783, 788 (1984)) (other citations omitted).

Courts considering whether minimum contacts exist examine "the relationship among the defendant, the forum, and the litigation." Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 775 (1984) (quoting Shaffer v. Heitner, 433 U.S. 186, 204 (1977). Here, there is no question that "[a]t all relevant times . . . Johns Hopkins . . . has continuously been a hospital doing business in the State of Maryland and its operational facilities are located [there]." Compl. at Parties. It is also

uncontested that plaintiff traveled to Maryland to seek treatment at Johns Hopkins. See Compl. ¶¶ 9, 13, 14-18. Therefore, the requisite minimum contacts between the defendant and the forum do not exist. See Keeton, 465 U.S. at 775.

Whether requiring an out-of-state defendant to defend a lawsuit in New York comports with "traditional notions of fair play and substantial justice" depends on a five-factor test used to analyze reasonableness. Kernan, 175 F.3d at 242. The factors are: "(1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering social substantive policies." Id. at 244 (citing Metropolitan Life, 84 F.3d at 568). Here, exercising personal jurisdiction over Johns Hopkins, a Maryland entity without operations in New York, would burden this defendant as its employees, witnesses, and documents are all located out of state. See Barreca Aff. ¶¶ 15-16. Neither administrative efficiency nor any strong New York interest or social policy justifies the exercise of jurisdiction over Johns Hopkins here. Plaintiff does not meet his burden of showing that the Court has jurisdiction over the defendant and the Court should dismiss plaintiff's action against Johns Hopkins for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2).

### III. Plaintiff's Emergency Medical Treatment and Labor Act Claim Against Johns Hopkins

Plaintiff alleges that Johns Hopkins "refused to attend plaintiff even after he was admitted" and that it "had plenty of time to inform plaintiff to look for another medical facility," but "failed to do so . . . from April 26, 2006 to May 15, 2006," exposing plaintiff to "unknown consequences in connection with his health when he was in need of the procedure." See Compl. ¶¶ 19-21. Even

if the Court were to find a basis to exercise personal jurisdiction over Johns Hopkins, plaintiff's claim against this defendant under the EMTALA fails as a matter of law.

Congress enacted EMTALA in 1986 to "prevent hospitals from failing to examine and stabilize uninsured patients who seek emergency treatment." Hardy v. New York City Health & Hosp. Corp., 164 F.3d 789, 792, 795 (2d. Cir. 1999). EMTALA provides:

> (a) Medical screening requirement
> In the case of a hospital that has a hospital emergency department, if any individual . . . comes to the emergency department and a request is made on the individual's behalf for examination or treatment for a medical condition, the hospital must provide for an appropriate medical screening examination within the capability of the hospital's emergency department . . . to determine whether or not an emergency medical condition (within the meaning of subsection (e)(1) of this section) exists.
>
> (b) Necessary stabilizing treatment for emergency medical conditions and labor
> (1) . . . If any individual . . . comes to a hospital and the hospital determines that the individual has an emergency medical condition, the hospital must provide either--
> > (A) within the staff and facilities available at the hospital, for such further medical examination and such treatment as may be required to stabilize the medical condition, or
> > (B) for transfer of the individual to another medical facility in accordance with subsection (c) of this section.

42 U.S.C. § 1395dd(a) and (b)(1). "In order to state a claim under the EMTALA, a plaintiff must allege that he went to the emergency room of a participating hospital seeking treatment for a medical condition, and that the hospital did not adequately screen him to determine whether he had an emergency medical condition, or discharged or transferred him before such a condition had been stabilized." Kolari v. New York-Presbyterian Hosp., 382 F.Supp.2d 562, 573-574 (S.D.N.Y. 2005). See also Fisher by Fisher v. New York Health and Hosps. Corp., 989 F.Supp. 444, 448 (E.D.N.Y.

1998) (same). Here, plaintiff did not go to the emergency room at Johns Hopkins, but rather he visited the gastroenterology clinic on April 26 and May 15, 2006. See Compl. ¶¶ 9, 14-18.

Moreover, plaintiff does not demonstrate that he had an "emergency medical condition" within the meaning of the EMTALA. Kolari, 382 F.Supp.2d at 573-574. The EMTALA defines "emergency medical condition" as:

> a medical condition manifesting itself by acute symptoms of sufficient severity (including severe pain) such that the absence of immediate medical attention could reasonably be expected to result in--
> (i) placing the health of the individual . . . in serious jeopardy,
> (ii) serious impairment to bodily functions, or
> (iii) serious dysfunction of any bodily organ or part.

42 U.S.C. § 1395dd(e)(1). While the Court sympathizes with what plaintiff had to endure regarding his medical condition, more than one month passed from the onset of symptoms on April 12, 2006, to the date plaintiff arrived at the Johns Hopkins clinic for a colonoscopy procedure, May 15, 2006. See Compl. ¶¶ 1-14. Given the passage of this amount of time, plaintiff's condition was not "acute" or of an "emergency" nature within the meaning of the EMTALA. See Campbell v. Westchester County, No. 96 CIV. 0467(JSM), 1998 WL 788791, at *3 (S.D.N.Y. Nov. 10, 1998) (finding no emergency medical condition and thus no EMTALA violation where the plaintiff visited a medical center's outpatient department for a "pre-arranged follow-up appointment made after his initial visit to the Outpatient Department").

As plaintiff did not go to "the emergency room of a participating hospital seeking treatment for . . . an emergency medical condition," Kolari, 382 F.Supp.2d at 573-574, plaintiff's complaint fails to "state a claim to relief that is plausible on its face" under the EMTALA. Twombly, 127 S. Ct. at 1974. Thus, Johns Hopkins's motion to dismiss plaintiff's EMTALA claim under Fed. R. Civ.

P. 12(b)(6) should be granted.[3]

## IV. Plaintiff's ERISA Claim Against the Fund

Plaintiff's May 22, 2006 complaint—filed one week after his colonoscopy appointment at Johns Hopkins—alleges that the Fund "had a clear obligation to afford plaintiff's medical expenses," but failed to do so, and that as a result "[p]laintiff has sustained damages including but not limited to, injuries, [t]he disruption of his normal life, medical procedure preparation for no reasons, expenses due to days out of work, travel and accommodations all product of the breach." See Compl. ¶¶ 32-34. The Fund argues that plaintiff's ERISA claim should be dismissed because plaintiff has failed to exhaust his administrative remedies as detailed in the Plan. The Court agrees.

The Second Circuit has recognized "'the firmly established federal policy favoring exhaustion of administrative remedies in ERISA cases.'" Kennedy v. Empire Blue Cross and Blue Shield, 989 F.2d 588, 594 (2d Cir. 1993) (quoting Alfarone v. Bernie Wolff Construction, 788 F.2d 76, 79 (2d Cir.), cert. denied, 479 U.S. 915 (1986)). The purposes of the exhaustion policy are to: "(1) uphold Congress' desire that ERISA trustees be responsible for their actions, not the federal courts; (2) provide a sufficiently clear record of administrative action if litigation should ensue; and (3) assure that any judicial review of fiduciary action (or inaction) is made under the arbitrary and capricious standard, not de novo." Kennedy, 989 F.2d at 594.

The Plan describing plaintiff's medical benefits specifies the procedure for appealing contested claims as follows:

> Should any [] person be dissatisfied with the determination of a

---

[3] As the Court finds that personal jurisdiction is lacking and that in any event plaintiff fails to state a claim under the EMTALA, it need not reach Johns Hopkins's other grounds for dismissal of plaintiff's complaint. See Johns Hopkins's Memo at 9-18.

14

> claim, he/she has the right to present their contentions to the Administrator of the Fund at the Welfare Fund Office, in writing within 60 days after such notice of determination is received ... The appeal will then be given a full and fair review by the Trustees of the plan or a designated sub-committee thereof. The employee will be notified in writing of the Trustees [sic] final decision within 60 days of receipt of the appeal or you will be notified in writing that the Trustees require more time to reach a decision.

Benefit Plan Description For Employees of Employers Contributing to the Local 485 Health & Welfare Fund, attached as Ex. A to Affidavit of Yvonne Bourne ("Plan") at 10. "On or about May 11, 2006 plaintiff was notified by [the Fund] that the health plan to which plaintiff was joined would not pay for the procedure (the colonoscopy at [Johns Hopkins's] facilities)." Compl. ¶ 12. Plaintiff did not appeal the Fund's denial of coverage, but rather filed the instant action one week after his colonoscopy appointment at Johns Hopkins. As plaintiff failed to exhaust his administrative remedies under the Plan, his ERISA claim should be dismissed.[4]

The Fund also argues that summary judgment should be granted because its decision not to cover plaintiff's colonoscopy with Johns Hopkins was not arbitrary and capricious. Where a denial of benefits is challenged under ERISA and where the "written plan documents confer upon a plan administrator the discretionary authority to determine eligibility," a district court should not overrule the administrator's decision unless it is "arbitrary and capricious." Pagan v. NYNEX Pension Plan,

---

[4] Plaintiff's opposition to the Fund's motion asserts that "Role's claim was for breach of fiduciary duty" and that "exhaustion is not required in actions for breach of fiduciary duty." Plaintiff's Answer to Codefendant's Motion for Summary Judgment Under F.R.C.P. 56 at 6. However, plaintiff's complaint and amended complaint make clear that plaintiff's action is a claim under ERISA. Plaintiff cannot raise a new claim, such as a breach of fiduciary duty, in his opposition to defendant's motion. See Beckman v. U.S. Postal Service, 79 F.Supp.2d 394, 407 (S.D.N.Y. 2000) ("Because a failure to assert a claim until the last minute will inevitably prejudice the defendant, courts in this District have consistently ruled that it is inappropriate to raise new claims for the first time in submissions in opposition to summary judgment.") (internal quotations omitted).

52 F.3d 438, 441 (2d. Cir. 1995) (quoting Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989)). This is the case under plaintiff's Plan, as "[t]he Trustees have the full power and final authority to interpret and apply the Plan, determine eligibility for benefits and all questions of coverage, and to make final decisions on all claims." Plan at 11.

"In reviewing the administrator's decision deferentially, a district court must consider whether the decision was based on a consideration of the relevant factors." Miller v. United Welfare Fund, 72 F.3d 1066, 1072 (2d Cir. 1995) (internal quotations omitted). Here, the Fund informed plaintiff on May 11, 2006 that it would not cover the procedure at Johns Hopkins on May 15. See Compl. ¶ 12; Fund's 56.1 Statement ¶ 8. The Fund denied plaintiff's claim because it has contracts allowing full coverage of medical services with two New York providers, but not with Johns Hopkins, and because full payment is not guaranteed to plan beneficiaries who use providers not under contract with the Fund. See Fund's 56.1 Statement ¶¶ 9-10.[5]

Even if plaintiff had exhausted his administrative remedies under ERISA, plaintiff would still have to demonstrate that the Fund's decision was "arbitrary and capricious." See Pagan, 52 F.3d at 441. The Court need not reach this issue, however, as plaintiff's ERISA claim should be dismissed for failure to exhaust his administrative remedies.

## V. Other Claims

Plaintiff also claims the Fund conspired to interfere with his civil rights "within the meaning of 42 U.S.C. § 1985 to deprive plaintiff of the rights conferred to him in The Plan." Compl. ¶ 27. In order to state a 42 U.S.C. § 1985(3) conspiracy in violation of his civil rights, "a plaintiff must

---

[5] Plaintiff could have had the procedure at Johns Hopkins, however he would have had full responsibility to pay for it.

16

allege: 1) a conspiracy; 2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and 3) an act in furtherance of the conspiracy; 4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." Britt v. Garcia, 457 F.3d 264, 270 (2d Cir. 2006). Such a conspiracy "must also be motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action." Thomas v. Roach, 165 F.3d 137, 146 (2d Cir. 1999) (internal quotations omitted). Here, plaintiff's complaint fails to state a claim of conspiracy regarding the Fund. Plaintiff merely states that the Fund "conspired within the meaning of 42 U.S.C. § 1985 to deprive plaintiff of the rights conferred to him in The Plan." Compl. ¶ 27. As plaintiff's conspiracy allegation is wholly conclusory, the Fund's motion for summary judgment should be granted on this claim.

Plaintiff also raises various state law claims against the Fund. Title 28 U.S.C. § 1367 (c)(3) "permits a district court in its discretion, to decline to exercise supplemental jurisdiction over state law claims if it has dismissed all federal claims." Tops Markets, Inc. v. Quality Markets, Inc., 142 F.3d 90, 103 (2d Cir. 1998). In exercising its discretion, "a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity . . ." Carnegie-Mellon University v. Cohill, 484 U.S. 343, 350 (1988). "[W]hen the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice." Id. In the usual case in which all federal-law claims are eliminated before trial, the balance of factors points toward declining to exercise jurisdiction over the remaining state-law claims. Id. at 350 n. 7. As plaintiff's federal claims against the defendants should be dismissed, the

17

Court should decline to exercise jurisdiction over the remaining state-law claims. See Kolari v. New York-Presbyterian Hosp., 455 F.3d 118, 122 (2d. Cir. 2006) (finding that "a district court 'may decline to exercise supplemental jurisdiction' if it 'has dismissed all claims over which it has original jurisdiction'") (quoting 28 U.S.C. § 1367(c)(3)).[6]

## CONCLUSION

Accordingly, it is respectfully recommended that Johns Hopkins's motion to dismiss and the Fund's motion for summary judgment should be granted and plaintiff's complaint should be dismissed. The Court should decline to exercise supplemental jurisdiction over plaintiff's state law claims. It is further recommended that the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from a judgment entered herein would not be taken in good faith for the purpose of denying plaintiff *in forma pauperis* status on appeal. See Coppedge v. United States, 369 U.S. 438 (1962).

---

[6] Since the Court recommends that the Fund's motion for summary judgment should be granted, defendant's request to dismiss this action for plaintiff's failure to comply with Court Orders pursuant to Fed. R. Civ. P. 37(b)(2) is hereby denied as moot.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court. Any request for an extension of time to file objections must be made within the ten-day period. Failure to file a timely objection to this Report generally waives any further judicial review. Marcella v. Capital Dist. Physician's Health Plan, Inc., 293 F.3d 42 (2d Cir. 2002); Small v. Sec'y of Health and Human Services, 892 F.2d 15 (2d Cir. 1989); see Thomas v. Arn, 474 U.S. 140 (1985).

SO ORDERED.

/S/
LOIS BLOOM
United States Magistrate Judge

Dated: October 9, 2007
      Brooklyn, New York