UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
ELOY A. ROLE, *pro se*,

                                  Plaintiff,

                             -against-

JOHNS HOPKINS BAYVIEW MEDICAL CENTER and
LOCAL 485 HEALTH AND WELFARE FUND,

                                 Defendants.
------------------------------------------------------------------------x

**ORDER ADOPTING REPORT AND RECOMMENDATION**

06 CV 2475 (DLI) (LB)

**DORA L. IRIZARRY, United States District Judge:**

       Plaintiff Eloy A. Role ("Plaintiff") initiated this action against defendants Johns Hopkins Bayview Medical Center ("Johns Hopkins") and Local 485 Health and Welfare Fund (the "Fund"–together with Johns Hopkins, "Defendants") alleging that Defendants unlawfully denied him medical coverage and medical treatment in violation of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132, and the Emergency Medical Treatment and Labor Act ("EMTALA"), 42 U.S.C. § 1395dd, respectively. Johns Hopkins moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(2), 12(b)(3), and 12(b)(6). The Fund moved for summary judgment pursuant to Fed. R. Civ. P. 56 and further requested, pursuant to Fed. R. Civ. P. 37(b)(2), that the court dismiss the instant action due to Plaintiff's failure to comply with court orders.

       The court referred the various motions to United States Magistrate Judge Lois Bloom. Judge Bloom issued a Report and Recommendation dated October 9, 2007 ("Recommendation") recommending that the court grant Johns Hopkins' motion to dismiss and the Fund's motion for

summary judgment.[1]  Plaintiff filed timely objections to the Recommendation on October 24, 2007.  Defendants did not file a response to Plaintiff's objections.

For the reasons set forth below, the court adopts the Recommendation in part and modifies it only to the extent that this court considers, and rejects, Plaintiff's breach of fiduciary duty claim against Johns Hopkins.  Accordingly, Johns Hopkins' motion to dismiss is granted, and the Fund's motion for summary judgment is also granted.[2]

## I.  Discussion

### A.  Standard of Review

When reviewing a magistrate judge's report and recommendation, a district judge must review *de novo* those parts of the report and recommendation to which any party objects.  *See* FED. R. CIV. P. 72(b).  The district court may then "accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge with instructions."  FED. R. CIV. P. 72(b); 28 U.S.C. § 636(b); *see also United States v. Raddatz,* 447 U.S. 667, 673-76 (1980).

### B.  Johns Hopkins

#### 1.  Personal Jurisdiction

Plaintiff objects to Judge Bloom's determination that the court does not have personal jurisdiction over Johns Hopkins in the instant matter.  Plaintiff concedes that New York's long-arm statute applies to his case, yet he also appears to argue that New Jersey's long-arm statute applies

---

[1]Familiarity with Judge Bloom's Recommendation is assumed, and the court, therefore, will not restate the facts of this case herein.

[2]As Judge Bloom noted, because the Fund's summary judgment motion is granted, the Fund's motion to dismiss due to Plaintiff's failure to comply with court orders is denied as moot.

as well. Pursuant to this latter theme, Plaintiff alleges and emphasizes numerous contacts that Johns Hopkins engaged in with Plaintiff, allegedly a citizen of New Jersey.[3]

New York's–and not New Jersey's–long-arm statute is applicable here. *Biofeedtrac, Inc. v. Kolinor Optical Enters. & Consultants, S.R.L.*, 817 F. Supp. 326, 331 (E.D.N.Y. 1993) ("a federal court normally looks either to a federal statute or to the long-arm statute of the State in which it sits to determine whether a defendant is amenable to service, a prerequisite to its exercise of personal jurisdiction") (quoting *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 105 (1987)). It is abundantly clear that Johns Hopkins' contacts with New Jersey are irrelevant to the determination of whether this court sitting in New York has personal jurisdiction over Johns Hopkins in this matter. *See* N.Y. C.P.L.R. § 302.

Plaintiff does mention, in passing, contacts that Johns Hopkins allegedly had with the state of New York. He states that Johns Hopkins communicated with the Fund via telephone on at least two occasions to discuss Plaintiff's insurance coverage and eligibility. Telephone calls of this nature are insufficient to establish minimum contacts with New York so as to justify this court's exercise of jurisdiction over Johns Hopkins. *See Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996). Accordingly, the court does not have personal jurisdiction over Johns Hopkins, and Plaintiff's objections in this regard are overruled.

   2.   **EMTALA**

Plaintiff further objects to Judge Bloom's determination that, in any event, Plaintiff has failed to state a claim against Johns Hopkins because he did not present himself to the emergency room of

---

[3]Plaintiff appears to have confused the concept of "personal jurisdiction" with "subject matter jurisdiction," as Plaintiff, in his objections, also argues in favor of diversity of citizenship jurisdiction, which is not an issue under consideration at this time.

a hospital seeking treatment for an emergency medical condition, as required under EMTALA. Recommendation 13. This court has already determined that it lacks personal jurisdiction over Johns Hopkins. However, even if the court were able to exercise such jurisdiction, the court concurs with the Recommendation that Plaintiff has failed to state a claim against Johns Hopkins under EMTALA.

Plaintiff argues that EMTALA does not require that he go to an emergency room. In support of his argument, Plaintiff cites to a case outside of this district, *Helton v. Phelps County Reg'l Med. Ctr.*, 794 F. Supp. 332 (E.D. Mo. 1992). Plaintiff points out that the *Helton* court held that patient "dumping," prohibited under EMTALA, was

> not limited to a refusal to provide emergency room treatment . . . It occurs . . . at any time a hospital determines that a patient's condition may result in substantial medical costs and the hospital transfers the patient because it fears it will not be paid for its expenses. Dumping a patient in this manner is neither related to, nor dependent upon, the patient arriving through the emergency room and never being stabilized.

*Helton*, 794 F. Supp. at 333-34 (citation omitted).

*Helton* is distinguishable on its facts. *Id.* at 333. In *Helton*, a patient was treated for major depression with anxiety during a two-day hospital stay but allegedly was prematurely discharged because he had no health insurance. *Id.* The patient committed suicide the day following his discharge. *Id.* Here, Plaintiff was not an inpatient who was prematurely discharged.

Moreover, the *Helton* court emphasized that "it is apparent [under section 1395dd(b)(1) of EMTALA] that it is the condition of the patient when taken into a hospital that controls, not the type of facility in the hospital." *Id.* Plaintiff has not demonstrated that he had an "emergency medical

4

condition" within the meaning of EMTALA. *See* 42 U.S.C. § 1395dd(e)(1).[4] As Judge Bloom correctly found, Plaintiff's condition cannot be considered "acute" or of an "emergency" nature, given that more than one month passed from the onset of Plaintiff's symptoms to the date Plaintiff arrived at Johns Hopkins for a colonoscopy procedure. *See Campbell v. Westchester County*, No. 96 CIV. 0467(JSM), 1998 WL 788791, at *3 (S.D.N.Y. Nov. 10, 1998) (finding no emergency medical condition where the plaintiff visited a medical center's outpatient department for a follow-up appointment despite the fact that the plaintiff allegedly risked a stroke if he did not receive treatment).

Accordingly, even if this court had personal jurisdiction over Johns Hopkins, Plaintiff's EMTALA claim against it would fail.[5]

---

[4] EMTALA defines "emergency medical condition" as

(A) a medical condition manifesting itself by acute symptoms of sufficient severity (including severe pain) such that the absence of immediate medical attention could reasonably be expected to result in–
    (i) placing the health of the individual . . . in serious jeopardy,
    (ii) serious impairment to bodily functions, or
    (iii) serious dysfunction of any bodily organ or part.

42 U.S.C. § 1395dd(e)(1).

[5] Plaintiff also put forth an argument concerning Johns Hopkins' alleged failure to provide the medical screening required under EMTALA. There is no doubt from the plain language of EMTALA that, at least in this regard, Plaintiff must present himself to a hospital's emergency room in order to receive medical screening. *See* 42 U.S.C. § 1395dd(a). Since Plaintiff did not do so, this argument is without merit.

## C. The Fund

Plaintiff objects to Judge Bloom's Recommendation that his ERISA claim be dismissed because he failed to exhaust his administrative remedies as detailed in his Benefit Plan.[6] Plaintiff does not contest that he was required to exhaust his administrative remedies with respect to his ERISA claim. Instead, he argues that he had alleged a breach of fiduciary duty claim against the Fund and that exhaustion is not required in actions for breach of fiduciary duty. He further argues that exhaustion was unnecessary because it would have been futile.

### 1. Breach of Fiduciary Duty

The Recommendation rejected Plaintiff's breach of fiduciary duty claim because "plaintiff's complaint and amended complaint make clear that plaintiff's action is a claim under ERISA. Plaintiff cannot raise a new claim, such as a breach of fiduciary duty, in his opposition to defendant's motion." Recommendation 15 n.4 (citation omitted). Plaintiff argues that he raised his breach of fiduciary duty claim in his July 10, 2006 motion for judgment on the pleadings ("July 10 motion").

Plaintiff did, in fact, raise a breach of fiduciary duty claim in a single sentence in his July 10 motion. In that motion, he stated that "codefendant [the Fund] breached its fiduciary duty when it interacted with the defendant [Johns Hopkins] in the denial of medical attention to plaintiff. (Da [*sic*] plaintiff A-B) shows that codefendant breached in more than occasion [*sic*] its fiduciary duties, failure to honor plaintiff's medical expenses with the following providers prove plaintiff's contentions: [listing providers]." (July 10 motion 3.) The court, construing *pro se* Plaintiff's papers liberally, will now consider his breach of fiduciary duty claim. *See Burgos v. Hopkins*, 14 F.3d 787,

---

[6]"Benefit Plan" refers to the "Benefit Plan Description For Employees of Employers Contributing to the Local 485 Health & Welfare Fund," attached as Exhibit A to the Affidavit of Yvonne Bourne.

790 (2d Cir. 1994) (holding that, where a party proceeds *pro se*, the court must "read his supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest").

The Second Circuit has not addressed the question of whether ERISA fiduciary claims are subject to the administrative exhaustion requirement. *See Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 102 (2d Cir. 2005); *see also Am. Med. Ass'n v. United Healthcare Corp.*, No. 00 Civ. 2800(LMM), 2007 WL 1771498, at *14 (S.D.N.Y. June 18, 2007). However, district courts within this circuit have drawn a distinction between claims relating to violations of the terms of a benefit plan, and claims relating to statutory violations of ERISA, finding that the former, but not the latter, claims must be administratively exhausted. *See, e.g.*, *Am. Med. Ass'n*, 2007 WL 1771498, at *14; *Uon Suk Park v. Trs. of 1199 SEIU Health Care Emples. Pension Fund*, 418 F. Supp. 2d 343, 359 (S.D.N.Y. 2005); *Shamoun v. Bd. of Trs., Liquor Salesmen's Union Local 2 Pension Fund*, 357 F. Supp. 2d 598, 602 n.3 (E.D.N.Y. 2005). Accordingly, breach of fiduciary duty claims seeking benefits allegedly due a plaintiff under ERISA must be exhausted. *See Shamoun*, 357 F. Supp. 2d at 602 n.3 ("Courts uniformly require exhaustion for claims based on violations of contractual rights protected by ERISA, such as denial of benefits."); *Del Greco v. CVS Corp.*, No. 03 Civ. 1262(CM)(LM), 2003 U.S. Dist. LEXIS, at *15-16 (S.D.N.Y. Sep. 22, 2003) ("By invoking the contract terms and seeking recovery of benefits damages, her statutory claim is equivalent to a simple contract claim 'artfully dressed in statutory clothing.'") (citation omitted); *Am. Med. Ass'n*, 2007 WL 1771498, at *15 ("[B]ona fide breach of fiduciary duty claims–that is, those that are based on an interpretation of the ERISA statute rather than of a plan and are not claims for benefits artfully pled as claims for breach of fiduciary duty–are statutory and not subject to the administrative exhaustion requirement.").

Plaintiff advances a breach of fiduciary duty claim by which he clearly seeks only to receive benefits under his Benefit Plan. Accordingly, exhaustion is required as to this claim. As Plaintiff has failed to exhaust his breach of fiduciary duty claim, it is dismissed on this ground.

### 2. Futility

Plaintiff claims it would have been futile for him to administratively exhaust his claims, thereby excusing his failure to exhaust. The Second Circuit has stated that, "[u]nless a clear and positive showing is made that it would be futile for the claimant to pursue her claim through the internal claims process, that remedy must be exhausted prior to the institution of litigation. *Eastman Kodak Co. v. STWB, Inc.*, 452 F.3d 215, 219 (2d Cir. 2006) (internal quotation marks and citation omitted). Plaintiff makes no showing that it would have been futile for him to have pursued his claim administratively. Thus, futility provides no excuse for Plaintiff here.

As Plaintiff has failed to exhaust his claims and has, further, failed to make a clear and positive showing that administrative exhaustion would have been futile, Plaintiff's ERISA and breach of fiduciary duty claims against the Fund are dismissed.

### D. Conspiracy

Finally, Plaintiff objects to Judge Bloom's finding that Plaintiff has failed to state a claim against the Fund of conspiracy to violate his civil rights under 42 U.S.C. § 1985. The Recommendation correctly held that, in order for Plaintiff to make out a conspiracy claim under 42 U.S.C. § 1985(3), Plaintiff must allege the following: "1) a conspiracy; 2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and 3) an act in furtherance of the conspiracy; 4) whereby a person is either injured in his person or property or deprived of any right

8

or privilege of a citizen of the United States." *Britt v. Garcia*, 457 F.3d 264, 270 (2d Cir. 2006) (citation omitted). Moreover, "the conspiracy must also be motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action." *Thomas v. Roach*, 165 F.3d 137, 146 (2d Cir. 1999) (internal quotation marks and citation omitted).

Judge Bloom found that Plaintiff's allegation of conspiracy was wholly conclusory. This court finds that Plaintiff's objection to the Recommendation has not cured this failing. Defendant baldly continues to allege that the Fund engaged in a conspiracy with Johns Hopkins and that he "was deprived of the equal protection of the laws, or equal privileges and immunities under the laws." While he claims that the Fund's refusal to pay for the procedure was "fully intertwined" with Johns Hopkins' refusal to provide a colonoscopy and subsequent alleged "dumping" of Plaintiff from the hospital, these facts are insufficient to allege a conspiracy for the purpose of depriving Plaintiff of the equal protection of the laws or of equal privileges and immunities under the laws. Importantly, Plaintiff has failed to allege any "racial or perhaps otherwise class-based, invidious discriminatory animus" behind the Fund's actions, which is required to state a conspiracy claim under § 1985(3). *See Thomas*, 165 F.3d at 146.

Accordingly, Plaintiff's § 1985(3) conspiracy claim against the Fund is dismissed.

**III. Conclusion**

For all of the foregoing reasons, the court adopts Judge Bloom's Recommendation in part and modifies it only to the extent of considering, and rejecting, Plaintiff's breach of fiduciary duty claim against Johns Hopkins. Therefore, Johns Hopkins' motion to dismiss is granted, and the Fund's motion for summary judgment is also granted.

SO ORDERED.

Dated: Brooklyn, New York
      February 15, 2008

                                                  /s/
                                         Dora L. Irizarry
                                United States District Judge